UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**Pres Baddy,**<br><br>   **Defendant.** | Case Nos. 25-cr-218, 25-mj-193 |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm) and 18 U.S.C. § 3142 (f)(2)(A) (Serious Flight Risk) as the Defendant, Pres Braddy, is charged in two matters with violating 18 U.S.C. § 922(g)(1) (Possession of a Firearm by a Person Previously Convicted of an Offense Punishable by More than One Year of Incarceration). The Defendant stands before this Court charged with illegally possessing a handgun on two occasions – once in 2023, and once in 2025 – despite multiple prior felony convictions, including a prior conviction for Unlawful Possession of a Firearm. Pursuant to 18 U.S.C. § 3142(g), the relevant factors support pretrial detention.

## BACKGROUND

On August 31, 2025, the United States filed a complaint charging the Defendant with Unlawful Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). On September 2, 2025, an initial appearance was held before the Honorable Magistrate Judge G Michael Harvey. After the United States made a motion for pretrial detention, the Court set the detention hearing for

1

September 3, 2025.

**<u>Open Indicted Matter – Case No. 25-cr-218</u>**

On Sunday August 27, 2023, officers with MPD's Fourth District Crime Suppression Team, including Officers Duckett, Ariemma, Al-Shrawi, and Toth responded to a call from Metropolitan Air Support helicopter regarding a stolen, white Jeep Grand Cherokee SRT bearing Maryland License Plate 7BM7988. The MPD Air Support helicopter lit up the stolen white Jeep, which began to flee at high speed.

After trying to escape the helicopter, the stolen Jeep blew a tire while traveling eastbound on New York Avenue NW. The Jeep drove over the center barrier on New York Ave and continued into oncoming traffic and onto North Capitol St NW. The Jeep was travelling at approximately 10-15 miles per hour with only 3 tires, as it became inoperable.

The Jeep came to a complete stop in the road in front of 12 R St NE. As the Jeep stopped, Inspector Pulliam, Third District Unit Officer Rogers, the MPD Air Support Unit, and multiple other MPD units that were canvassing in the area saw four (4) individuals exit the vehicle and began to run in separate directions. The driver of the Jeep was stopped at 13 Quincy Pl NE and identified as Ronnell Dennis Jr. A black male with a white shirt was observed fleeing from the front passenger-side seat of the vehicle with a dark in color backpack, later identified as Kazon Cassion. A black male with a black shirt was observed fleeing from the rear passenger-side seat of the vehicle, later identified as Pres Braddy. Both Cassion and Braddy initially fled westbound in the Unit block of R St NE. Cassion was stopped at the intersection of Lincoln Rd and R St NE by Officer Rogers but was no longer carrying the backpack. Braddy was stopped by Officers Toth and Al-Shrawi in front of 1711 Lincoln Rd NE. Officers never lost sight of Cassion or Braddy

after they exited the vehicle.

The fourth suspect, who was wearing a white shirt, entered the passenger side of a gray Honda and made good their escape. The MPD Air Support helicopter then broke off and monitored the path of this suspect in the gray Honda.

Once officers secured the suspects, they conducted a plain view search of the stolen Jeep and saw a magazine with ammunition through the open rear passenger side door on the rear passenger side seat.


*Figure 1 Rear Passenger Seat (from which Braddy fled)*

A second magazine was discovered in the back storage area of the Jeep, along with the Glock 23 Gen 5 firearm. The firearm was catty-corner behind where Braddy was sitting in the Jeep, i.e., where it would have landed had Braddy thrown the firearm into the back of the Jeep.



*Figure 2 Firearm recovered from back storage area of the Jeep*



*Figure 3 Magazine recovered in back storage area of Jeep from behind cooler*

K9 Officer Shifflett arrived with a canine. The canine tracked the backpack that Cassion carried when he left the vehicle to the front yard of 12 R St NE under a bush and in Cassion's flight path. The canine gave a positive alert on the backpack for the presence of a firearm. The backpack contained a pistol and 207 grams of marijuana in 7 clear bags and loose unpackaged

4

marijuana.

During a search incident to arrest of Defendant Braddy, a black twist containing a white rock-like substance was recovered from his right front pants coin pocket. The rock-like substance was field tested by Officer Bryan, which yielded a positive color reaction for cocaine base.

In total, the items recovered from the backpack and the vehicle consisted of the following:

- **Recovered From Vehicle Back Storage Area:**
    - Glock 23 Gen 5 .40 caliber, (No magazine) 0 rounds in the chamber
    - Serial#: BXAL751
    - .40 Caliber magazine containing 22 rounds with 22 round capacity
- **Recovered from vehicle back seat:**
    - .40 Caliber Glock magazine containing 13 rounds with 13 round capacity
- **Recovered from backpack located in front of 12 R St NE:**
    - Glock 23 Gen 4
        - Serial#: BKFW503
        - .40 Caliber
        - Magazine containing 15 rounds with 22 round capacity
        - 1 round in the chamber
    - Key to the recovered stolen Jeep
    - 207 grams of Marijuana (including packaging)
    - Digital Scale
    - 28 gram container of THC wax
- **Recovered from Defendant Braddy:**
    - Black twist containing white rock like substance
- **Recovered from Defendant Cassion:**
    - $440 Dollars U.S. Currency

A WALES/NCIC query of the Glock 23 with serial# BXAL751 recovered from the trunk of the vehicle revealed it to be stolen out of PG County Maryland on April 23, 2023. The stolen firearm, the magazine, and ammunition seized from the trunk of the vehicle was accessible to all occupants of the vehicle, as the trunk area of the vehicle was not separated or divided by any barriers. The magazine and ammunition recovered from the rear passenger seat was accessible to all occupants of the vehicle as well. Cassion was observed in possession of the backpack when exiting the vehicle, and the backpack was recovered in the direct flight path of Cassion.

The 2021 Jeep Grand Cherokee was entered as stolen in WALES/NCIC on 6/5/2023. (VIN 1C4RJFDJ9FC744262). A WALES/NCIC check revealed that the Maryland license plate 7BM7988 belongs on a 2014 Toyota.

The firearm and magazine found in the Jeep were swabbed for DNA and tested against a buccal swab from Braddy. The results were *very strong support for inclusion* on both the magazine and firearm. The magazine found in the *back* of the Jeep came back with *limited* support for inclusion.

### Item 3 (Swabs from magazine from back seat)

Male DNA was obtained from item 3. Item 3 was interpreted as originating from one individual.

The DNA results from item 3 are 36 octillion times more likely if BRADDY, JR. is a contributor than if an unknown, unrelated person is a contributor.

| Person of Interest (POI) | Likelihood Ratio (LR)[3] | Level of Support[4] |
|---|---|---|
| BRADDY, JR. | $3.6 \times 10^{28}$ (36 octillion) | **Very Strong Support for Inclusion** |

DENNIS, JR. is excluded as a potential contributor to item 3.[5]

### Item 4 (Swabs from pistol from trunk)

Male DNA[6] was obtained from item 4. Item 4 was interpreted as originating from three individuals.

The DNA results from item 4 are 14 octillion times more likely if BRADDY, JR. and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors.

| Person of Interest (POI) | Likelihood Ratio (LR)[3] | Level of Support[4] |
|---|---|---|
| BRADDY, JR. | $1.4 \times 10^{28}$ (14 octillion) | **Very Strong Support for Inclusion** |

### Item 5 (Swabs from magazine from trunk)

Male DNA[6] was obtained from item 5. Item 5 was interpreted as originating from two individuals.

The DNA results from item 5 are 62 times more likely if BRADDY, JR. and an unknown, unrelated person are contributors than if two unknown, unrelated people are contributors.

| Person of Interest (POI) | Likelihood Ratio (LR)[3] | Level of Support[4] |
|---|---|---|
| BRADDY, JR. | 62 | Limited Support for **Inclusion** |

When officers found the Defendant's cell phone, the home screen showed an image of a firearm. A search warrant was later executed for the contents of the phone which revealed numerous photographs of the Defendant possessing firearms and a video of the Defendant firing a firearm on a gun range. One of the photographs on the phone depicted a firearm bearing serial number BXAL751, the same serial number as the firearm found in the trunk area of the vehicle.

## *Open Complaint – 25-mj-193*

On Saturday, August 30, 2025, at approximately 11:42 p.m., members of the MPD Third District Crime Suppression Team, along with other law enforcement partners, were patrolling a parking lot in the vicinity of 2371 11th Street NW, also known as the Garfield Terrace apartments, in the District of Columbia. The premises is property of the District of Columbia Housing Authority.

As officers' vehicles entered a parking lot on the premises, officers observed a group of approximately 10 to 15 persons congregated at the rear of two vehicles parked in the lot. At this time, one person, subsequently identified as PRES BRADDY, began to separate himself from the group and walk away on the sidewalk at the edge of the parking lot in a westward direction, behind a fenced-off area containing construction equipment.

Officers exited the MPD cruiser and approached the group at the front, as well as from the west side where BRADDY was seen walking to. Officers rounded the fenced-off area of construction equipment, officers observed that BRADDY had returned to the group. Officers also

observed two plastic bags on the sidewalk that appeared to contain sealed bottles of liquor. Officers further observed an abandoned black cross-body satchel lying on the sidewalk, which officers stepped on and felt a hard object contained therein. Officers then picked up the black satchel from the sidewalk, at which point officers immediately felt an object consistent with a firearm inside. Officers then opened the bag and observed that it contained a firearm, which was seized. The firearm was a Glock 27 .40 caliber pistol, Serial No. PMA023. At the time it was recovered, the firearm had one round in the chamber and 15 additional rounds in a 15-round magazine. In addition, the satchel also contained a plastic bag containing 17 rounds of .40 caliber ammunition.

Officers then immediately voiced the predetermined code word for the presence of a firearm and directed the group of males standing nearby to sit on the ground, in order to determine whether the owner of the firearm was present. A short time later, an employee of the D.C. Housing Authority ("DCHA") Police Department subsequently used CCTV footage of the premises to identify the subject matching the description of BRADDY as the person who dropped a black object with a strap on the ground, in the same location where the black satchel was found containing the loaded firearm. Officers placed BRADDY under arrest.

Officers subsequently viewed DCHA CCTV footage, which showed the subject subsequently identified as BRADDY, wearing a black hooded sweatshirt with red accents and white striping on the sleeves, separate from the group when officers arrive, walk behind the fenced-off construction area in the parking lot, remove a black object with a strap and drop it to the ground, and then return to the group. The CCTV footage then shows officers additional law enforcement enter the area moments later, at which time the satchel with the firearm was discovered.

*<u>Defendant's Criminal History/History of Compliance</u>*

    I.    *Convictions*

The Defendant has multiple prior convictions that involve the possession or use of a firearm. Additionally, the Defendant has failed to follow court instructions by failing to appear for court dates, violating curfew, and violating probation, resulting in revocation.

Most recently, the Defendant was convicted in D.C. Superior Court Case Number 2021 CMD 5570 for Failure to Register as a Sex Offender. The Defendant had been convicted of Misdemeanor Sexual Abuse in 2011 CF1 21795. According to the factual proffer for the plea agreement, the Defendant failed to verify or provide updated residence information between November 16, 2019 and September 3, 2021.

It bears noting that, according to the Gerstein for this matter, officers arrested the Defendant inside of 3506 Stanton Place NE. Inside of the residence, officers found a Glock 23 loaded with 21 rounds in an extended magazine with a twenty-two-round capacity. The leaseholder for the residence indicated she did not own any firearms, and that the Defendant slept in the bedroom where the firearm was found.

Prior to that conviction in 2021, the Defendant was convicted of Unlawful Possession of a Firearm in Superior Court Case No. 2016 CF2 21171. According to the factual proffer filed with the plea agreement, officers went to Defendant's residence to arrest him on a warrant for failure to appear. The Defendant was found in the residence, and in his bedroom, officers found a nine-millimeter firearm with 16 rounds in the magazine and one round in the chamber. The firearm was submitted for DNA testing, which found that the defendant was a major contributor to the DNA on the magazine and firearm. Notably, the Defendant committed this offense while on release in 2015 CF2 11179 (see below), which was also an offense that involved the use of a gun. According

9

to the Pretrial Services Report, probation in this matter was revoked to incarceration on March 18, 2024.

The Defendant was previously convicted for failing to appear in 2016 CF2 21159. According to the factual proffer from the Defendant's plea agreement, the Defendant bench warranted for a status hearing in two matters - 2015 CF3 11179 and 2016 CF2 4343 - on October 5, 2016. Notably, the Defendant had been in court for those cases one day earlier and notified that he was required to appear the next day. The Defendant failed to return for nearly three months until he was arrested on December 28, 2016, when he was picked up on the bench warrant and found with a gun (conduct for which he was charged in 2016 CF2 21171, above). According to the Pretrial Services Report, probation in this matter was revoked to incarceration on March 18, 2024.

In connection with the plea agreement in 2016 CF2 21159, the Government agreed to dismiss 2016 CF2 4343. In that case, according to the Gerstein, the Defendant was released with a curfew between 10pm – 6pm in 2015 CF2 11179. Officers did a check at his residence at 10:40 PM on March 18, 2016, but the Defendant was not there, and family members said the Defendant had not been in the residence all day. Four days later, on March 22, 2016, officers found the defendant in the community at 7:04 PM at 700 Roxboro Place NW, not in his residence, which was 4616 5th St NW. The locations are 1.5 miles apart. The Defendant was arrested and charged with Contempt.

The Defendant was convicted of Unauthorized Use of a Motor Vehicle in 2015 CF2 11179. However, according to the Gerstein, this was not simply a case of the Defendant driving a stolen vehicle. The conduct was related to an armed carjacking and an armed robbery. On August 17, 2015, at approximately 10:30 PM, two to three suspects, all armed with guns, committed a

10

carjacking at 410 Peabody Street NW. The suspects stole a black BMW.

Minutes later, the carjacked vehicle was involved in an armed robbery at the 3700 block of 14th Street NW. After the armed robbery, a police helicopter picked up the carjacked vehicle – and began to track it. The vehicle tried to flee into alley but crashed into a house at 709 Tewksbury Place NW. Two suspects, one of whom was the Defendant, fled from the vehicle but were caught by officers. The Defendant had the keys to the BMW on his person. A search of the vehicle yielded 6 rounds of .223 ammunition and 1 round of 9 mm ammunition. A citizen later reported that they saw one of the suspects run past their residence (located adjacent to the crash location) and found a gun wedges under a residence near the crash site. The Defendant was never charged with the carjacking or armed robbery because no complainant or witness could identify the assailants. According to the Pretrial Services Report, probation in this matter was revoked to incarceration on March 18, 2024.

In Docket Number, 2011 CF1 21795, the Defendant was convicted of Misdemeanor Sexual Abuse. According to the factual proffer from the plea agreement, the Defendant, who was 18 years old at the time, had sex with a 13-year-old.

Finally, the Defendant was convicted of Receiving Stolen Property in Docket Number 2011 CF2 21507. According to the factual proffer from the plea agreement, the Defendant was riding passenger in a vehicle that fled from a traffic stop. During flight, the driver crashed the vehicle. Rather than stay on scene, the Defendant got out of the vehicle and fled. Officers later determined the vehicle had been stolen.

II.   *Uncharged Firearms-Related Conduct*

The Defendant was arrested in 2022 and 2024 for firearms possession. Starting with the most recent matter in 2024 (CCN 24018745), on February 6, 2024, officers responded to 3506

11

Stanton Road SE to arrest the Defendant on a parole warrant. Inside of the residence, officers found the Defendant and Dashawn Barnes. According to the Gerstein, when officers stated their purpose for entering the home, Ms. Barnes was alleged to have interfered with officers trying to locate the Defendant. Officers eventually arrested Ms. Barnes in the kitchen area. As to the Defendant, officers eventually located the Defendant hiding in a closet at the location.

In the kitchen area, officers found a pistol in plain view on top of a loaf of bread in the kitchen. The firearm was loaded with 17 rounds in the magazine. Ms. Barnes claimed on scene that the firearm belonged to her. DNA testing was conducted of the firearm which showed that Ms. Barnes' and the Defendant's DNA were present on the firearm. Ms. Barnes was charged with Possession of an Unregistered Firearm in 2024 CDC 1183, though Ms. Barnes was ultimately found not guilty in a bench trial.

In 2022, according to the Gerstein filed in this matter (CCN 22133299), on September 14, 2022, officers responded to 3506 Stanton Road SE for a domestic violence in which the Defendant allegedly assaulted Ms. Barnes. Officers were allowed to enter the residence, and inside, officers found two firearms magazines on a glass table in the entryway. Officers found the Defendant and a second suspect on a sofa. Also on the sofa was a black satchel which contained a nine-millimeter handgun with 18 rounds in the magazine. Additionally, officers found a third magazine in the residence. The firearm was swabbed for DNA and submitted for testing. At the time of this filing, the results of that testing are unknown.

**LEGAL AUTHORITY AND ARGUMENT**

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the

government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, and *Williams*, 798 F. Supp. at 36.

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a Defendant] as required and the safety of any other person and the community," the Court shall order a Defendant held pending trial. 18 U.S.C. § 3142 (e). The Act provides however, for certain crimes, that there is a rebuttable presumption that no conditions or combination of conditions will assure the safety of the community. *See id.* "For the purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a Defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

The United States seeks detention pursuant to under 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm) and 18 U.S.C. § 3142 (f)(2)(A) (Serious Flight Risk) because the Defendant now has two pending matters involving firearms possession, has a history firearms possession and not abiding by court instructions, and has either fled from or tried to hide from police. A review and understanding of the facts and circumstances in the instant matters demonstrate that there are no conditions or combination of conditions that would assure the safety

of the community. *See* 18 U.S.C. § 3142(e)(1). All four § 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

### I.   The Nature and Circumstances of this Offense Merits Detention.

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The Defendant is charged with two serious offense each carrying a significant penalty. For violating 18 U.S.C. § 922(g), the Defendant faces a maximum sentence of up to 15 years imprisonment pursuant to 18 U.S.C. § 924(a)(8). Here, the evidence is convincing that the Defendant carried a loaded firearm in the community on two occasions, once in August 2023, and once just a few days ago on D.C Housing Authority Property. As to the first open indicted matter, the Defendant is tied to the gun by his presence in the vehicle, his own DNA, and photos in his phone. As to his recent arrest, video surveillance captured the Defendant trying to discard and distance himself from the satchel bag that contained a loaded firearm. Before dropping the bag, the Defendant had the bag on his person. For both cases, the firearms were readily accessible to the Defendant, and most recently, the firearm had a round chambered. There was no indication that the weapons were either inert or otherwise inoperable.

As a threshold matter, the Court has repeatedly held that possession of a firearm, when loaded or carried in a concealed manner as in this case, poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when Defendant's prior

convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a Defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020). The firearms recovered from had many of these troubling characteristics, and more broadly, the firearm most recently recovered was loaded and ready to fire when it was recovered. Simply stated, unlawful gun possession is so problematic, especially by someone with the Defendant's criminal history, because of the number of violent gun crimes committed in the District.

## II.  The Weight of the Evidence Against the Defendant is Strong.

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. Here, the Government's cases against the Defendant are strong.[1] Starting with the

---

[1] The weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] Defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and

15

indicted case, officers observed the Defendant flee from the vehicle, and inside of the vehicle, a magazine was recovered in the back seat, and a gun was found in the trunk. The Defendant's DNA was on both items. It is improbable his DNA would be on both items, which were in different locations, for any other reason except that the Defendant previously possessed and handled the firearm and magazine. Moreover, the Defendant had images of that very firearm in his phone.

As to the Defendant's most recent arrest, video surveillance corroborates the officers' observations of the Defendant's suspicious behavior and attempt to discard the satchel bag containing the gun. "If the evidence against a Defendant is overwhelming, credible, helpful, and important to the government's case in chief that may increase the risk that Defendant will flee to avoid future court proceedings and may indicate that the Defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. And so it is in these cases, the weight and strength of the evidence in these cases increase the prospect that the Defendant will present a danger to the community if released.

### III.  The Defendant's History and Characteristics Merit Detention.

The third factor, the Defendant's history and characteristics weigh in favor of detention. The Defendant's history reveals a prior conviction for possessing a firearm, potential involvement in an armed carjacking involving the use of firearms, and multiple instances where the Defendant was found in homes where firearms were present. Moreover, the Defendant's history shows he is

---

careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

16

a serious risk of flight. He has previously been convicted for failing to appear for court in felony matters in D.C. Superior Court. Additionally, he has previously fled from police on three occasions and tried to hide from police on a fourth occasion. The Defendant's probation or parole has been previously revoked. And finally, the Defendant has shown that he is willing to violate pretrial release conditions by refusing to abide by a curfew. Based on these facts, the Defendant's history and characteristics shows that he is someone who is willing to persistently and illegally possess guns in the community and is incapable of abiding by conditions of release. As a result, there are no conditions that can be fashioned to mitigate his danger to the community and his serious risk of flight.

### IV. The Defendant Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by the Defendant's release, weighs in favor of detention. "At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. The Defendant's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the Defendant presents an extreme safety risk to the public."). Add to this the Defendant's previous unwillingness to abide by the conditions of pretrial release or probation, the Court is therefore presented with an individual who is a danger to the citizens living within the District.

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing

17

evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *Munchel*, 991 F.3d at 1280 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

    At the time of this filing, no third-party custodian has been presented to the Government. But even if one were to be fashioned, the Defendant has a documented history of evasive behavior with law enforcement and refusing to abide by a curfew. Additionally, the Defendant now has two pending matters for possessing firearms in the community plus numerous instances in which he was present in residences where firearms were lying about. As a result, the Government submits there are no third party custodians who could mitigate the Defendant's danger or risk of flight. Therefore, this factor also weighs in favor of detention.

**CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court detain the Defendant pending trial on these charges.

        Respectfully submitted,

        JEANINE FERRIS PIRRO
        UNITED STATES ATTORNEY

By:   s/ Travis Wolf
       TRAVIS WOLF
       Assistant United States Attorney
       NY Bar No: 5483243
       United States Attorney's Office
       601 D Street, NW
       Washington, D.C. 20530
       Telephone: 202-803-1670
       Travis.Wolf@usdoj.gov